## JOHN WELDER V. WILKINS HUNT.

1. The opinion of the majority of a jury, though accepted as a verdict by agreement of the parties litigant, will not be regarded by this court as entitled to the consideration conceded to verdicts; and such a finding will be set aside if it be not supported by the weight of the evidence.

2. In the ascertainment of disputed boundaries it is a fixed rule of law that monuments shall govern courses and distances, and courses and distances govern calls for quantity; but in the absence of calls either for monumunts or courses and distances, then calls for quantity may be resorted to

3. If upon one side of the eldest grant no boundary line was described, either by calls for monuments or for courses and distances, and the line had not otherwise been established, then the holder of that grant would be entitled, as against subsequent locators, to claim upon that side so much of the public land as his grant called for.

4. If, however, the holder of the eldest grant had, by monuments or other notorious designation, established his boundary line in such a manner as to induce the public to believe it to be his true boundary, and subsequent locators had made their locations in the belief that it was his true boundary line, then the eldest grant could not be extended for quantity beyond that line.

5. In the progress of the present case, the holder of the eldest grant set up and claimed a certain line as the eastern boundary of his grant, though his boundary on that side was not defined by calls either for monuments or for courses and distances, and his grant called for seven and a half leagues. *Held*, that by his claim of such boundary line in the present suit, he will be estopped, as against subsequent locators, from asserting title to any land east of such line, even though the quantum of his grant be not contained within the area circumscribed by such line.

6. After the death of a surveyor, his declarations respecting a line officially run by him upon the ground may be given in evidence by any competent witness.

7. The case of Welder v. Carroll, 29 Texas, 315, cited, and the various rulings approved.

APPEAL from Victoria. Tried below before the Hon. Wesley Ogden.

A full statement of the facts will be found in Welder v. Carroll, 29 Texas, 315.

*Davis & Murphy*, and *Phillips & Nevill*, for the appellant.

*Glass & Callender*, for the appellee.

WALKER, J.—This case was fully before this court at the January term for Galveston, in the year 1867, and will be found reported in 29 Texas Reports, 317, under the title of John Welder *et al.* against Rufus Carroll. To this case we refer for the points decided, a full statement of facts and an exhaustive review of the authorities.

The question for our determination is mainly a question of fact. This question was submitted to a jury in the district court, which failed to agree upon a verdict such as is usually required by law, and although the parties agreed to receive the opinion of the majority of the jurors, and regarded it as a verdict in the case, it cannot be regarded by this court as entitled to the sanctity which we ordinarily attach to the verdicts of juries. We shall not, therefore, hesitate to set aside such a finding if we find it unsupported by the weight of evidence. The instructions of the court to the jury were as follows:

"In this cause I charge the jury that the location and survey of the plaintiff, as alleged in his petition, if fully proven up by the evidence is sufficient to establish his claim to the land so located and surveyed, provided the same was not made upon land held by a prior, and therefore superior and subsisting claim or title; and therefore, if you believe from the evidence that the location and survey of plaintiff was made upon public and unappropriated lands, then you should find for the plaintiff the lands described in his petition.

"I further charge you that the concessions made by the Mexican government to defendants' grantors are good and valid titles

for the land conveyed by these concessions or grants, or either of them; and therefore, if you believe from the evidence that the concessions or grants made to Felipe Roque Portillo and sons, and others claimed by defendant, were of a prior date to the location and survey of plaintiff, and that defendant is the owner of the grants, by transfer or otherwise; and further, if you believe the land now claimed by the plaintiff is covered by those prior concessions or grants, or either, then you should find for the defendants."

We do not think the finding of the majority of the jury is either responsive to the charge of the court, or supported by the weight of evidence, or in accordance with it, and it might have been set aside for these reasons; but the parties having agreed to receive an extraordinary finding, the court may have considered an appeal to this court the true and proper course to be pursued. It is considered by the appellant that the line marked XY, on map B, running north and south from the waters of the Aransas river to the Chiltipin creek, is the true eastern boundary line of his grant. The appellee contends that no such boundary line was ever established, and affirms that no line was ever marked upon the land to separate the grants made to Felipe Roque Portillo and his sons, and that made to Power and Hewitson.

It is admitted that these grants are contemporaneous, and had the Power and Hewitson grant been valid, there can be no doubt but that any deficiency in the land granted must have been sustained equitably between the two grants, each losing in proportion to the quantity it called for.

In the ascertainment of disputed boundaries, it is a fixed rule of law that monuments shall govern courses and distances, and courses and distances govern calls for quantity; but, in the absence of both the former, then calls for quantity may be resorted to. Now, if the theory of the appellee be correct, that there was no eastern boundary line fixed to the Portillo grant, and it was

not governed by courses and distances, then the holders of the seven and a half league grant had a right to run east for quantity until they had the amount of land called for in their grant, as against all subsequent grantees of the State. It must, however, be observed that if the holders of the seven and a half league grant did, according to their theory of this case, establish their eastern boundary line by monuments, marks upon the land, or other notorious designation upon the line XY, or any other line, in a manner to induce the public to believe that that was the true east boundary line, and subsequent locators made their locations in confidence that this was the true line of boundary between their locations and the seven and a half league grant, then and in that case the seven and a half league grant could not be extended for quantity beyond this line. And we go further, and say that Welder will be estopped from claiming any of the land east of the line XY, on map B, by virtue of the proceedings in this case—having set up and notoriously claimed that as his eastern boundary line in this proceeding, nor can he be forced back westwardly by a junior grant.

The State of Texas has respected all valid Mexican grants, and she would not grant away land of which the Republic of Mexico had already made a valid grant. The grant to Wilkins Hunt is subsequent to that under which Welder claims, and must be in equity subject to it, as it is in law under the rules laid down.

It is a well established rule of law that boundary lines may be proved by the common understanding and report of a community. The declarations of public officers are held admissible to prove their official acts, and we see no reason why the declarations made by a surveyor, who claims to have run the line upon the ground, as to the location of a boundary line, may not, after the death of the surveyor, be proved by the witness to whom he made the declarations. We might hesitate to go so far as to admit the declarations of an interested party, yet we have no hesitation in

XXXIV—3

saying that the declarations of the surveyor, as to an official act of his own made upon the ground, may be given in evidence after his decease, by any competent witness who heard the declarations.

For the reasons given the judgment of the district court is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.