### TRACY et al. v. EGGLESTON et al.

(Circuit Court of Appeals, Fifth Circuit. April 16, 1901.)

No. 909.

1. BOUNDARIES—EVIDENCE—DECLARATION OF DECEASED SURVEYOR.

　　Under the rule established by decision in Texas, which, as a rule of property, is binding upon the federal courts sitting in that state, declarations of a deceased surveyor in regard to the lines and corners of a survey which was originally made by him, made on the ground while pointing out

a monument placed there by him in making the survey, are admissible in evidence in an action involving the location of the survey, although at the time the declarations were made he was part owner of the land embraced in such survey, and interested in a controversy then pending as to its boundaries. The objection that such declarations were self-serving is not fatal, since they could not be used as evidence during his lifetime, or while his testimony was obtainable.

2. APPEAL—REVIEW OF INSTRUCTIONS—EXCEPTIONS.

A general exception to a charge, which does not direct the attention of the trial court to the particular portion or portions to which objection is made, raises no question for review in the appellate court.

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Texas.

This action was brought by Eustace R. Tracy and others, citizens of the state of New York, against Mary S. Eggleston and others, citizens of the state of Texas. It is an action of trespass to try title to 640 acres of land situated in Sutton county, Tex. The jury found a verdict for the defendants, on which judgment was entered. During the trial a bill of exceptions was reserved by the plaintiffs. The following is a part of the bill of exceptions: "E. Von Rosenberg, a witness for the defendants, duly sworn, was, over plaintiffs' objection, permitted by the court to testify that in 1885 witness was an employé of the state land office; that Jacob Keuchler, formerly land commissioner of the general land office, requested the commissioner of the land office to issue no patents to lands lying between block C, H. E. & W. T. Ry. Co., and the Devil's river, until the real location of the surveys now claimed by defendants could be ascertained; that in the fall of 1885, witness, Jacob Keuchler, and others went to the place of alleged conflict, and witness was there sworn in as a special state surveyor; that Jacob Keuchler pointed out to witness a loose mound of rock on the north bank of Elbow Lake, and informed witness that the same was a mound of rock placed there by himself (Keuchler) at the time he located Rusk Transportation No. 3 and its constructed surveys; that Keuchler informed witness that the beginning corner of Rusk Transportation No. 3 was 950 varas S., 45 degrees W., from said loose mound of rock; that witness did not go S., 45 degrees W., 950 varas, to ascertain whether said beginning corner of No. 3 was located there or not; that he did not run out any of the lines of No. 3 at the time, and did not see any of the corners thereof; that the stone mound shown him by Keuchler on the bank of Elbow Lake was not called for by Keuchler in the original field notes of survey No. 3; that, while there were trees there, which might readily have been used as bearing trees, he did not then, nor has he since, discovered any marked bearing trees there; that, ordinarily, a surveyor, in making an actual survey, where bearing trees were accessible, would have used the same. All of which testimony as to the declarations of Jacob Keuchler made to witness was objected to upon the grounds that, defendants admitting that Jacob Keuchler at the date of said declarations was a joint owner and tenant in common with defendants in said lands, said declarations by Keuchler were self-serving, and made post litem motam, at the time when he (Keuchler) had requested that no patents issue by the state until he could go upon the ground and designate where he intended the location of his surveys; because said declarations permitted said Keuchler, in his own interest, after the location of plaintiffs' certificate and the issuance of their patents, to go upon the ground, and select and designate the land which he intended, or claims to have intended, to have appropriated by his original entry, notwithstanding such location varied the relative location of his original field notes, placed his said survey at the junction of streams different from those named in his original field notes, and appropriated lands in conflict with plaintiffs' lands at a point shown by the official records and his field notes to have been vacant and unappropriated at the time of plaintiffs' location of their surveys; because said statement of said Keuchler was an ex parte statement, made in his own interest, without affording opportunity of cross-examination; because said testimony of the

witness Von Rosenberg was hearsay,—which objections so made were each and all by the court overruled, and the testimony of said witness was by the court permitted to go before the jury; to which action of the court in overruling said objections and allowing said testimony to go before the jury plaintiffs then and there, in open court, before the retirement of the jury, excepted."

The court charged the jury as follows: "Gentlemen of the jury, this is an action brought by the plaintiffs named in the petition against the defendants, Mary S. Eggleston and O. T. Word, in the ordinary form of trespass to try title for the recovery of five sections of land surveyed and patented by certificates issued to the Houston, East & West Texas Railroad Company. The defendants allege, substantially, that they are the owners and are in possession of six sections of land set out in their answer, surveyed and patented,— one of said tracts being survey No. 3, patented by virtue of a certificate issued to the Rusk Transportation Co.; that defendants' locations, surveys, and patents were all prior to those of plaintiffs, and hence that, if the lands described in plaintiffs' patents include the lands described in defendants' patents, that defendants have the superior title, because their locations and patents were prior in point of time to those of plaintiffs. I charge you that defendants admit that plaintiffs are the owners of the certificates by virtue of which their patents were issued, and that plaintiffs admit that the defendants are the owners of the certificates by virtue of which their patents were issued; consequently, there is no issue as to titles between the parties to be submitted to you. The sole question for you to determine is, 'Where were all the surveys of the defendants located on the ground?' If the lands embraced in the patents of plaintiffs are the same lands embraced in the patents of defendants, then defendants are entitled to a verdict in their favor, because their locations and patents are prior in point of time to those of plaintiffs. The plaintiffs contend in this case that defendants' surveys should be constructed by beginning at the northeast corner of survey No. 21, as shown by the map, and thence by running east 11,400 varas for the beginning corner of No. 3, and that by thus locating defendants' land such lands will not embrace those of plaintiffs, and that in such case plaintiffs would be entitled to recover the land in controversy. Defendants, however, contend that the call above named for the northeast corner of survey No. 21, thence east 11,400 varas, made by the surveyor Keuchler, is a mere random or guess call, and by mistake, and that their survey No. 3 was in fact made by this surveyor Keuchler on Elbow Lake, as explained to you by the map and by the evidence. In order to determine the location of a survey made on the ground, it is your duty to follow the footsteps of the surveyor on the ground, and to locate the survey on the ground as the surveyor made the survey. If you believe from the testimony that Keuchler, the surveyor who made the survey of the defendants, actually surveyed on the ground defendants' survey No. 3, commencing at Keuchler or Elbow Lake, and that from that point he constructed said survey No. 3, you will return a verdict for defendants. If, on the other hand, you do not believe from the evidence that said Keuchler actually made said survey on the ground (and the presumption of law is that it was made on the ground, unless the evidence in the case shows to the contrary), then you will endeavor, from the evidence and the field notes, to ascertain where the surveyor intended to locate said survey No. 3. The law in such cases lays down certain rules for your guidance, and they are as follows: Calls in field notes are divided into three classes, and their dignity and importance are stated in the following order: First, calls for natural objects, such as rivers, creeks, etc., which stand first; second, calls for artificial objects, such as stakes, mounds, etc., which come next; and, third, course and distance, which come last. Course will prevail over distance. Where there is a conflict between calls in a grant, you must reject those which are most uncertain, and adopt those which are most certain, and which will the more nearly preserve the configuration of the survey, and conform the more nearly to all the other calls, and reflect the intention of the surveyor in locating the grant. In this case there is a conflict between the northeast corner of survey No. 21 and the other calls in the grant; and, if you do not believe that the surveyor actually made a survey of No. 3 on the ground, then you will apply the above rules to the evidence in

determining whether the surveyor intended to locate said survey No. 3 11,400 varas from the northeast corner of survey No. 21, or whether he intended to locate the same on Elbow or Keuchler Lake. If you believe that said surveyor, under the above instructions, intended to locate said survey No. 3 11,400 varas from the northeast corner of said survey No. 21, then in such case you will return a verdict in favor of plaintiffs. But, on the other hand, if you believe that the surveyor intended to locate said survey No. 3 on Keuchler or Elbow Lake, then you will disregard the call for the northeast corner of survey No. 21, and in such case your verdict will be for the defendants. Each call in the survey must be given effect to, if possible; but, where all cannot be, and one call conflicts with many others, which, if given effect to, would override many other calls, then it would be your duty to disregard this one call so conflicting with many others. When a survey is actually made upon the ground, and some of its lines and corners are fixed, and can be found and identified, then the survey must be located by those lines and corners so found and identified. If you believe that the surveyor actually surveyed No. 3 on the ground, on Keuchler or Elbow Lake, and that some of the corners and lines established by him can be found, then in such case you will disregard the call 11,400 varas for northeast corner of No. 21, and return a verdict for defendants. You are the exclusive judges of the credibility of the witnesses, and the weight to be given their testimony; and in a civil suit, such as the present, you may predicate your finding on a preponderance of the evidence. If your verdict be in favor of the plaintiffs, you will return it in the following form: 'We, the jury, find for the plaintiffs for the lands described in their petition.' If your finding be in favor of the defendants, you will simply say: 'We, the jury, find for the defendants.' "

The bill of exceptions shows that an exception was reserved to this charge, as follows: "To which charge of the court so given the jury plaintiffs then and there in open court excepted, because the same did not charge the law applicable to the case made by the evidence; because the same was on the weight of the evidence; because the same incorrectly stated the issues involved, and failed to present the law of the entire case under the pleadings and evidence, and incorrectly states the law as given."

It is assigned as error, and insisted on in the argument: (1) That the court erred in permitting the declarations and statements of Keuchler, the deceased surveyor, to be proven; and (2) that the court erred in the charge given.

John D. Rouse and Wm. Grant, for plaintiffs in error.

R. H. Ward, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

There had been offered in evidence a map or survey of 1878, which was in use in 1879 in the general land office and Bexar land district. This map was based on a survey made by Jacob Keuchler, who died before the trial. In the fall of 1885, E. Von Rosenberg, accompanied by Jacob Keuchler and others, went on the lands alleged to be included in the survey, and Von Rosenberg was sworn in as a special state surveyor. Jacob Keuchler pointed out to the witness a loose mound of rock on the north bank of Elbow Lake, and informed the witness that it was a mound of rock placed there by himself (Keuchler) at the time he located Rusk Transportation No. 3 and its constructed surveys. He said that the beginning corner of Rusk Transportation No. 3 was 950 varas S., 45° W., from this loose mound of rock. The defendants objected to this testimony as to the declarations of Jacob Keuchler. The first question for consideration is whether or not these declarations of Keuchler

were admissible in evidence. Von Rosenberg was acting officially. He was on the ground as special state surveyor, and his acts in that connection are clearly admissible in evidence. No objection is made to them. No objection is made to proof of the fact that the mound of rock was on the land as stated. No objection is made to the fact that Keuchler pointed out the mound of rock. This part of Von Rosenberg's evidence is a statement of facts to which no objection was or could properly be made. The objection, therefore, is confined to the declaration of Keuchler, made at the time he pointed out the mound of rock, that they were placed there by himself at the time he located the corner, and that the corner was at a certain distance and in a designated direction from the mound of rock. It was said by the supreme court in 1880, after an examination of the Texas cases, that there was no essential difference between the rule there as to the question here considered and the general rule held by the American courts. The court observed, however, that, if there was a difference, which had become a rule of property in Texas applicable to the determination of controversies respecting disputed boundaries, such rule would be controlling in the federal courts. Hunnicutt v. Peyton, 102 U. S. 333, 364, 26 L. Ed. 113.

In George v. Thomas, 16 Tex. 74, 92, the court admitted the declarations of a public surveyor. "He was a public surveyor," said the court, "and his declarations while making the survey were clearly admissible as a part of the original res gestæ. On these questions of boundary the courts have gone much further, and, under certain restrictions, have freely admitted hearsay evidence to establish old surveys and boundary lines."

In Stroud v. Springfield, 28 Tex. 649, 665, a memorandum was offered in evidence as having been made by a surveyor. It was found among the surveyor's papers, but the handwriting was not proved, and no effort was made to show its genuineness. The paper was excluded, but the court said:

"If the genuineness of these papers had been sufficiently proved, we are of opinion that they would have been admissible in evidence as the declarations of the party making them, for the purpose of aiding in the ascertainment of the boundaries of the Powell league."

In Welder v. Hunt, 34 Tex. 44, 48, the court said:

"The declarations of public officers are held admissible to prove their official acts, and we see no reason why the declarations made by a surveyor, who claims to have run the line upon the ground, as to the location of a boundary line, may not, after the death of the surveyor, be proved by the witness to whom he made the declarations. We might hesitate to go so far as to admit the declarations of an interested party, yet we have no hesitation in saying that the declarations of a surveyor as to an official act of his own, made upon the ground, may be given in evidence, after his decease, by any competent witness who heard the declarations."

In Hurt v. Evans, 49 Tex. 311, 316, it was held that the declarations of a deceased owner of a tract of land as to the corners of the tract of which he was in possession at the time they were made are admissible in a contest as to the locations of such corners and lines.

The case of Reeves v. Roberts, 62 Tex. 550, is very much like the case at bar. A witness was on the stand, who had made a survey of the land in question. He testified that one Tinnon, an old surveyor, told him that he had been at that place (on the land surveyed) 20 years before that time, and recognized it as the southeast corner of the grant; that he had seen bearing trees, and the marks on them, while they were standing; and that in making surveys in the neighborhood he had made that a beginning point. The court held that the evidence of declarations made by Tinnon, in connection with his acts and means of knowledge, reaching back as they did for a period of 36 years prior to the trial, in connection with the other evidence in the cause, was admissible for the purpose of establishing the ancient boundary.

In Russell v. Hunnicutt, 70 Tex. 657, 8 S. W. 500, the declarations of a surveyor, giving his opinion as to the identification of corners and lines of the survey, were excluded because the land was not originally surveyed by him, and because it appeared that he had no previous knowledge of the original survey. The court, however, said:

"Where it is shown that the surveyor was in a position to know the truth of his declarations from having made the original survey, or from other knowledge possessed by him, the rule is different."

In the recent case of Ayers v. Harris, 77 Tex. 108, 115, 13 S. W. 768, a memorandum, being properly identified as being made by the surveyor, who died before the trial, was received in evidence. The court observed:

"It is a well-recognized rule that the declarations of the surveyor may be proved under the circumstances existing at the time of the trial of this cause. Such evidence can certainly rank no higher, and cannot be so safe or satisfactory, as evidence written down by the surveyor at the time."

The opinion of the supreme court in Hunnicutt v. Peyton, supra, indicates that in questions of private boundary declarations of particular facts, as distinguished from reputation, made by deceased persons, are admissible when "made by persons who it is shown had knowledge of that whereof they spoke, and who were on the land, or in possession of it, when the declarations were made."

In one of the Texas cases which we have quoted the court refers to the declarations which were admitted as being those of persons who are disinterested, and in another one of the cases the court said it might hesitate to go so far as to admit the declarations of an interested party. We have found no case, however, that excluded the declarations, which were otherwise relevant, because the declarant was interested. In several of the cases where the declarations of owners in possession as to boundaries were received the declarant manifestly had an interest, and yet the declaration was received. Such declarations, when not received as a part of the res gestae, and when not received as declarations against interest, are really accepted in evidence as a substitute for the dead or absent declarant. If he were present as a witness, as the statutes now stand, his interest, or his being a party to the action, would not make him incompetent. Rev. St. Tex. 1895, § 2300; Rev. St. U. S. (2d Ed.) § 858. We do not think, therefore, that the fact that Jacob Keuchler had

an interest in the real estate involved in the controversy rendered his declarations inadmissible.

The only other question raised by the plaintiff in the argument at bar or in the briefs relates to the charge of the court. The charge and exception have been given in full in the statement of the case. It will be seen that the charge was intended to cover the several questions in the case. There are portions of it that are not objected to in the argument at the bar or in the briefs filed. An excerpt consisting of three sentences is selected by the learned counsel for the plaintiff in error as being erroneous. It is as follows:

"In order to determine the location of a survey made on the ground, it is your duty to follow the footsteps of the surveyor to locate the survey on the ground as the surveyor made the survey. If you believe from the testimony that Keuchler, the surveyor who made the survey of the defendants, actually surveyed on the ground defendants' survey No. 3, commencing at Keuchler or Elbow Lake, and at which point he constructed said survey No. 3, you will return a verdict for defendants. If, on the other hand, you do not believe from the evidence that said Keuchler actually made said survey on the ground (and the presumption of law is that it was made on the ground, unless the evidence in the case shows to the contrary), then you will endeavor, from the evidence and the field notes, to ascertain where the surveyor intended to locate survey No. 3."

This part of the charge was not singled out and excepted to on the trial. The exception there taken was to the entire charge. The objections which were stated in the exception reserved related to the entire charge. The objections were that the court did not charge the law applicable to the case made by the evidence; that the charge was on the weight of the evidence; and that it incorrectly stated the issues involved, and failed to present the law of the entire case under the pleading and evidence, and incorrectly stated the law as given. These exceptions and objections manifestly go to the entire charge. No portion of it was selected for exception or objection. No separate objection was made to the part of the charge now singled out in argument for objection. It is well settled that a general exception to the whole of a charge to the jury will not avail a plaintiff in error if the charge contains distinct propositions, and any one of them is free from error. If the exception does not direct the attention of the trial court to a particular portion or portions of a charge to which objection is made, it raises no question for review in the appellate court. Burton v. Ferry Co., 114 U. S. 474, 5 Sup. Ct. 960, 29 L. Ed. 215; Anthony v. Railroad Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301; Lincoln v. Claflin, 7 Wall. 132, 19 L. Ed. 106; Cooper v. Schlesinger, 111 U. S. 148, 4 Sup. Ct. 360, 28 L. Ed. 382.

The assignments of error, we think, are not well taken. The judgment of the circuit court is affirmed.

PARDEE, Circuit Judge (dissenting). The record shows that Jacob Keuchler, the deceased surveyor, whose declaration was offered and admitted in evidence, was, at the time the declaration was made, directly interested in a controversy inaugurated by him, then pending in the land office, as to the boundaries of the tracts of land involved. He was making declarations as a bystander not

engaged in the act of running lines, and in his own interest, and presumably to his own advantage. Under no well-adjudged case that I have been able to find are self-serving declarations, particularly when made after contest commenced, admissible in evidence. For the authorities and a full, exhaustive discussion of the subject, see 1 Phil. Ev. (Cow., H. & Edw. Notes) pp. 218 et seq., 245.

The majority opinion seems to rely on Texas cases, and a short review of them may be indulged in. The declarations admitted in George v. Thomas, 16 Tex. 74, 92, were the declarations of a public surveyor, made while making the survey in question, and there was no suggestion whatever of self-interest in the survey.

The papers offered in evidence in Stroud v. Springfield, 28 Tex. 649, 665, in regard to which it was said that, "if the genuineness of these papers had been sufficiently proved, we are of opinion that they would have been admissible in evidence as the declarations of the parties making them," were papers purporting to be field notes and copies of field notes actually made when running a survey, and I can find very little authority from this obiter to hold that the subsequent declarations of a surveyor after contest commenced, and in his own interest, can be admissible as evidence; particularly when I consider the case of Speer v. Coate, 3 McCord, 229, cited by the court as authority, wherein it is said:

"It cannot be doubted at this day that the declarations of deceased persons, who shall appear to have been in a situation to possess the information, and are not interested, shall, on a question of boundary, be received in evidence."

The statement by the court in Welder v. Hunt, 34 Tex. 44, 48, to the effect that "we see no reason why the declarations made by a surveyor, who claims to have run the line upon the ground, as to the location of a boundary line, may not, after the death of the surveyor, be proved by the witnesses to whom he made the declaration," evidently refers to declarations made by the surveyor at the time of running the alleged survey; but in that case the court took care to say, "We might hesitate to go so far as to admit the declarations of an interested party."

In Hurt v. Evans, 49 Tex. 311, the ruling was in regard to the declarations of a deceased owner, and was as follows:

"Surely, if the declarations of a deceased person in reference to ancient boundary lines are admissible at all, as has been held by this court, those of James Lynch, the grantee of the land, who lived on his league, and sold all three of these tracts, would be of the very highest authority, having been made when he had no interest whatever in favor of one or the other party."

I am at a decided loss to understand how this case can be cited as authority for the proposition that the declarations of a deceased surveyor, made after contest, and in his own interest, are admissible in evidence.

In Reeves v. Roberts, 62 Tex. 550, which is said by my Brethren to be very much like the case at bar, the declarations admitted were those of one Tinnon, an alleged surveyor, made in connection with his acts and means of knowledge, reaching back as they did for a period of 36 years prior to the trial, in connection with other evi-

dence in the case, and were held to be admissible for the purpose of establishing an ancient boundary. A most careful examination of this case fails to show that at the time the declarations were made by Tinnon there was any contest as to the location of the ancient boundary, or that Tinnon had any interest whatever in the matters in regard to which he made the declarations. The court cites Stroud v. Springfield, 28 Tex. 661, and it must have taken as a part of the authority in that case Speer v. Coate, 3 McCord, 229, which seems to insist that the declarations of deceased persons admissible in evidence must be the declarations of persons who were not interested. It would seem that the likeness of Reeves v. Roberts to the instant case is not so very apparent.

In Russell v. Hunnicutt, 70 Tex. 657, 8 S. W. 500, wherein the court indulges in an obiter which my Brethren cite as authority, the court cites Speer v. Coate, 3 McCord, 229, Sutherland v. Keith, Id. 258, and Stroud v. Springfield, 28 Tex. 649, in all of which stress is laid upon the proposition that the declarations must be disinterested. The court says, citing Hurt v. Evans:

"One who has been the owner of a survey is presumed to know his own boundaries, and his declarations as to boundaries, made after he has parted with his title, and when he has no interest in favor of either party, are admissible after his death."

In Ayers v. Harris, 77 Tex. 110, 115, 13 S. W. 768, the court certainly said:

"It is a well-recognized rule that the declarations of the surveyor may be proved under the circumstances existing at the time of the trial of this cause. Such evidence can certainly rank no higher, and cannot be so safe or satisfactory, as evidence written down by the surveyor at the time."

But the declarations referred to by the court were field notes and survey made by one Johnson, who made a survey of the tract in controversy prior to the Moreno grant, and the memorandum of which, made by him at the time of the survey, was deposited in the general land office at the same time that the title itself was deposited there, and carefully preserved ever since, and spoken of with veneration as "an archive," and which the court held to be, if not an archive of the general land office, at least a memorandum made by a surveyor at the time the work was done.

These are all the Texas cases cited in the opinion of the majority bearing on this question, but I go further, and quote, as having pointed application, from Wallace v. Berry, 83 Tex. 328, 332, 18 S. W. 595:

"Appellant sought to give character to a transaction occurring between John Lee and Thurmond & Ray in 1874 by the declarations of Lee made many years afterwards, and we think it clear that such declarations were not admissible as res gestæ; and, being self-serving, the fact that they were made while in possession of the land would not make them admissible for any purpose bearing on the question of title. Whart. Ev. § 1101; Whitney v. Houghton, 125 Mass. 451; Nourse v. Nourse, 116 Mass. 102; Duvall's Ex'r v. Darby, 38 Pa. 59; Hogsett v. Ellis, 17 Mich. 371; Morrill v. Titcomb, 8 Allen, 100."

Considerable reliance seems to be placed on the case of Hunnicutt v. Peyton, 102 U. S. 333, 26 L. Ed. 113, which, after considering many cases herein cited, decides that the rule in Texas with regard to the

admission of declarations of deceased surveyors where boundaries are in suit is in accordance with the general rule. In that case, however, it is to be noticed that exceptions to the rule are well recognized, and therein the declarations of a deceased surveyor who had previously run the survey were rejected because not made when the surveyor was actually upon the ground. There was no question made as to the self-serving character of the declarations offered, and the court distinguishes and approves Ellicott v. Pearl, 10 Pet. 412, 9 L. Ed. 475, as follows:

"In that case, which was a writ of right for a tract of land, in which the location of a survey was a matter in controversy, a witness was offered to prove that one Moore, who was dead, but whose name was put down as one of the chain carriers in making the original survey, and who was subsequently present when lines were run on the same land, had declared that a certain corner was the corner made by the surveyor when the original survey was made and the line was run for that survey. The evidence was rejected, and, this court ruled, correctly rejected, though the declarations offered were made by one who was proved by other evidence to have assisted in running the line. This case is instructive, and we believe it is in harmony with the rule generally enforced in this country. It certainly is in accord with the ruling of the English courts."

In the examination of this case I have made a study of all the adjudged cases and text-books at hand bearing on the point in question, and I have failed to find in a single adjudged case or in any text-book any countenance for the proposition that declarations made by an interested party, owner, surveyor, chain man, after contest commenced, are admissible in evidence.

It appears that Surveyor Keuchler made the surveys under which both parties in this case claim on the 10th day of November, 1877, as deputy surveyor of the Bexar land district; that thereafter, having a locative interest to the extent of one-half in the survey under which the defendants claim, which his heirs still hold, he instituted proceedings in the land office to withhold the patents until further surveys; and thereafter, in 1885, on a resurvey by the state surveyors, one Von Rosenberg and others, Keuchler made declarations in his own interest as to the location of the corner from which the original surveys were made. These declarations of this interested party in his own interest were admitted in evidence over the objections of the plaintiffs. In my judgment, this was erroneous, and so decidedly prejudicial as to require the reversal of the judgment of the circuit court, and a trial de novo.

### On Rehearing.

(May 14, 1901.)

SHELBY, Circuit Judge. The case of Wallace v. Berry, 83 Tex. 328, 18 S. W. 595, we think, has no application here. It did not involve a question of boundary. In that case it was held that the declarations of a grantor by deed absolute, remaining in possession, were not admissible to show that the deed was a mortgage. That was the point decided. The court said such declarations were not admissible for any purpose "bearing on the question of title." That case surely cannot be considered as overruling the previous cases

holding that the declarations of one in possession are admissible on the question of the boundaries of the tract held by him. Wharton distinguishes between the two classes of cases, saying, in section 262, that declarations of a party taking possession of land are admissible "as to the boundaries," and, in section 1101, that declarations of a person in possession of land "in support of his own title are inadmissible." Whart. Ev. §§ 262, 1101. In the opinion handed down we quoted from Welder v. Hunt, 34 Tex. 44, 48, this expression, referring to declarations as to boundaries: "We might hesitate to go so far as to admit the declarations of an interested party." That case was decided before the passage of the act of May 19, 1871, that made parties and persons interested in the suit competent witnesses. Acts Tex. (21st Sess.) pt. 2, p. 108. The expression quoted shows that the court would hesitate to exclude such declarations, even before the passage of the statute. The incompetency as witnesses of parties and persons who are interested will account for many similar expressions in the older American cases. The reason for excluding declarations as to boundaries made by a deceased person, who was a party or interested in the case, was that, if he were alive and present, and his interest continued as at the time the declarations were made, he would not be allowed to testify. Now, when the parties and witnesses having interest are permitted to testify, there can be no logical reason for excluding the declarations, if otherwise admissible, because of such interest. The fact that Keuchler pointed out the loose pile of stone placed there when the survey was made was admitted in evidence without objection. It was an act, and not hearsay. No tenable objection could be made to proof of the act. A remark made by him relevant to the question of boundary, while so pointing out the object, is a part of his act. Whart. Ev. § 262. Even before the statutes making parties and persons interested competent witnesses, the rule was that self-serving declarations were admissible as a part of a transaction into which they immediately entered. Whart. Ev. § 1102. The objection that the rule, as applied in this case, will permit a litigant to make evidence for himself, is not well taken. When such declarations are admitted as a part of the res gestæ, the usual limitations should always be applied, limiting the admissibility of the declarations to such as accompany and become parts of an act admissible in evidence. When admitted under the rule relating to boundaries, they are admissible, under the Texas cases, only when the declarant is dead, or not obtainable as a witness. It is not probable that such declarations would be made with self-serving premeditation, to be used as evidence after the death of the declarant. The fact that the declarant must die, or at least become unobtainable as a witness, to make his declarations admissible, prevents the rule being dangerous to the property interests of his adversary. We think the declarations objected to are admissible in evidence, and the application for a rehearing must be denied.